and L.L.C. v. Tanarra James All right, Mr. Brom, when you're ready. Good morning, Your Honors. Scott Brom on behalf of Fairmont Cash Management, DBA, Cash Cal Pawn. I may please the Court, Counsel. I know Your Honors have read the briefs and you're all very prepared for this morning, so there's really just a couple of things that I would like to try and focus the Court's attention on as you consider our appeal. The first thing that is really important in these types of cases, and specifically in an FFL revocation or denial of an application, which essentially are the same thing legally. But whenever we're dealing with an FFL revocation under the Gun Control Act, there's one very big distinction from a lot of cases that come before the Court, and that is that the proceedings below at the administrative stage, they are not governed by the Administrative Procedures Act. And so that hearing below, it's a non-APA hearing. It's not conducted by an ALJ. It's conducted by a retired employee of ATF, typically. There's no ability to compel witnesses. Testimony is not taken under oath. And none of the other protections that come with an APA proceeding are available there. And so it's really important because one of the arguments that I make in these cases is when does the FFL get their day in court? And, you know, if not now, when? And the answer to that question has to be sometime. If it's not at the administrative stage because there's no ALJ, I would submit it has to be at the district court level because the government is not able to revoke that license without the licensee having that proverbial day in court. So what do you wish you could have put into evidence that you didn't? Because it seems to me this is a case, there's not a lot of outside discovery. You have the knowledge within your business of what happened and what your defense is going to be. What do you wish you had told Judge Hanks that he didn't allow you to get discovery on? Well, there are a couple of very specific things, Your Honor. First and foremost, at the administrative hearing, ATF presented a witness that reviewed their internal investigative file. That file was never provided to my client. We never had the opportunity to look at what was in that, and that file is critical here because the basis of the revocation is that we're going to take the conduct of a single rogue employee and we're going to impute it to the licensee. And so that information is not within my client's knowledge. We don't know. You know what he did. This is Alfonso, is that the name? Alfonso Nelson, Mr. Nelson. Right. Well, we know the outward conduct, but we don't know exactly how he went about it. We don't know how he took steps to hide it from my client, et cetera. And so they presented a witness, not under oath, to tell my client and I at that hearing what she remembered about reading in some file somewhere. And so the first answer to your question is that investigative file that shows I would submit that Cash Cow had no knowledge, had no involvement, had known nothing with respect to this criminal conduct. The file wasn't admitted in the administrative proceeding. It was just relied on by the witness? Correct. She read it at some point prior to the hearing and told us what she remembered about it. And I asked for that file in discovery, and I was denied that. The second most important thing beyond the file is, obviously, I'd like the opportunity to depose someone under oath at some point, and we were denied that opportunity as well. So we have a witness at the administrative proceeding. But you were allowed to question anyone in the administrative proceeding, right? There wasn't anybody there to question except that single witness. The agent. Well, she's an investigator who admittedly reviewed the file, and I could ask her, well, what do you remember about reading the file? But I don't have the file, and I don't have anybody there with personal knowledge of it. So did she have it there? It was not at the hearing, to the best of my knowledge. Where was it? In ATF's office. You're not disputing that Nelson did any of this stuff, are you? So I guess I'm still having trouble. So, I mean, an employee's conduct can make a corporation criminally liable, but you're basically saying it shouldn't be able to make them administratively liable? No, absolutely not, Your Honor. My point is, and this is really what I want to focus the Court's attention on, is context. These kinds of cases have to turn on context and the circumstances. The government argues, for example, that a single violation of the Gun Control Act is sufficient to revoke a license. I totally agree with that. That is what the law is. Sometimes. Well, if it's willful. Even then. It may be, yes, but you have to drill down and see what's going on. The government argues that an employee's criminal conduct can be imputed. I agree with that. Sometimes you have to agree what's going on. The Fifth Circuit previously said in Piotrowski v. Houston that the employer has to have somehow blessed that criminal activity. They had to have, and that's their word, blessed. The employer had to have had some knowledge, some involvement, et cetera, in it. Because there are certainly instances where you could impute that conduct if the employer was aware of it, if they had horrible safeguards in place and had been warned that it was occurring and didn't care. I could think of many scenarios. The final notice of revocation had 14 enumerated instances of violations. And this refreshes my memory about it. The first one says on three different occasions they sold a firearm to a person known to be subject to the prohibition. They failed a timely and accurate report to sell two or more semiautomatic rifles. On 12 different occasions they didn't accurately report the sale of two or more pistols or revolvers to the same unlicensed person. On seven different occasions they failed to accurately record the disposition. And it goes on and on. Some of them are like on 14 different occasions selling a firearm without recording the database, et cetera, et cetera. If those things are accurate, you dispute the accuracy of that whole list of them, pages of lists of those kind of violations. What goes to you to dispute? Well, the recitation of those facts we don't take issue with, Your Honor. But under the guise of- Well, why isn't that enough to revoke your license, for heaven's sake? Either those facts suggest that either you're being willful or you're grossly negligent. They're selling these things across the right and left, and they're serious violations. They include making a false statement on a federal firearms form. They're selling a firearm without recording it. On four different occasions they didn't do the paperwork. On 16 different occasions they failed to get the required documentation. On 10 different occasions they sold a firearm without verifying the identity. On 14 different occasions they sold a firearm without recording the national database, et cetera, et cetera. I guess I don't quite get it. And that's not enough to take your license? Under the law, Your Honor, I would submit it's not, and I can tell you why. Well, help me with that. Under the Gun Control Act, and again, the violations that Your Honor references fall into two categories. All of the violations that related to Mr. Alonzo's criminal conduct, and then I'll save the other violations.  Okay, I'm sorry. The violations that related to Mr. Alonzo's criminal conduct, and then the other violations. But with respect to both types, under the Gun Control Act, the government can only revoke the license if there's a willful violation. And willfulness was put into the statute back in 1986 as a protection for licensees. Willfulness, that's why I was pointing to the pattern, a large pattern of violations themselves. At some point, you move from either indifference to willfulness. And why isn't that enough to support an administrative determination of willfulness? I would submit it's absolutely not, Your Honor, because willfulness basically has four different possible meanings. Intentional, which there's nothing in the record here that would even remotely support that. Knowingly, same point. Recklessness or plain indifference. The case law is clear that negligence is not enough. And this is where you have to drill down into the totality of the substance. How is it not intentional? I mean, these are intentional acts of selling guns to straw buyers, of misrepresenting things on the form. What do you mean that there's no evidence of intentionality? Well, intentionality, Your Honor, means obviously the form is filled out. And, for example, pick a box. There's a box on the form that says county. Some people often think it says country, and they'll write USA in it. And so while the buyer writing USA in that box is obviously an intentional act, the gun dealer intentionally completed that transaction, but the violation itself isn't an intentional conduct. You have to drill down to what's going on because, by definition, it's exactly what you said. County and country? Yes, sir. But Nelson selling this stuff to people he knew weren't qualified. Correct. No, I'm not saying that. Coming back to Nelson, you said in response to one of my last questions that for the responsibility in a criminal case, even, to attach to the corporation, they have to have blessed the conduct. You cited Piotrowski v. City of Houston. That's a 1983 case, and in Section 1983, there's not vicarious liability for a municipality, so you have to prove that the municipality had a practice or policy. Do you have any authority that in criminal cases, vicarious liability doesn't apply? Well, again, our point is not that it doesn't apply. It's that you have to look at the circumstances when it can apply, and there has to be something in order to base that imputation on. You can't just take the act itself and then automatically make the leap that it's imputed to. What authority says that? Because in my experience, if a corporation has a few folks overseas paying bribes to get business, that makes the corporation liable, and these days they're paying hundreds of millions of dollars in fines for violating the Foreign Corrupt Practices Act because they have a few employees bribing foreign officials. What authority says you're not criminally liable unless there's this policy or blessing from the corporation? I don't believe that authority is specifically out there, Honor, because the case law doesn't deal with it in this context, and I would submit that's a different situation that is exactly what I mentioned earlier. When that is in furtherance of the employee's duties, when that is within the scope of his employment, all of the factors that we would look at, whether it's under respondeat superior or any other basis, there must be some basis of imputing that liability to get to that employer, and here there's absolutely nothing, and literally I mean nothing in this record, other than the fact that he worked there and he did it. And that's vicarious liability in respondeat superior. And the testimony at the hearing was even beyond that where Mr. Munz, the owner of CashCow, testified that ATF told him that Mr. Nelson actually took affirmative steps to hide this,  We had a criminal sting operation, and that should have told everybody what was going on. You had more than 50 different violations, and then after the criminal sting operation, they continued to do it. I mean, this is an accident? Well, no, Your Honor, obviously that — Am I misstating the fact? Wasn't there a criminal sting operation? Correct, and that is when CashCow — You said a number of these different — Alonzo, whatever, this rogue employee. Then after the criminal sting operation, they still had more violations. Well, the only violations that occurred after the sting were the other violations not related to Mr. Alonzo, and that's where we have to look again at the totality of the circumstances. The way courts typically establish recklessness or plain indifference in order to meet the willful standard under the Gun Control Act is to look at things like your past compliance history. Are these repeat violations, et cetera? The violations themselves aren't sufficient that you have to establish willfulness, and the prior inspection to the 2014 inspection was closed without a single violation whatsoever. Are these salesperson's commission or salary? I believe they're salary. Salary? I believe so. They're not rewarded for performance? Again, I believe not, Your Honor. That's my recollection. What's the best case you're relying on to get relief that you're asking? Putting aside the matters you've argued about not having this administrative record, people, what is the best case you're relying on in this ATF context to get the relief you're asking for? Well, it goes back primarily to Harris, the Eighth Circuit case. Although the Fifth Circuit authority is in accord. Harris was just decided last year. But, again, it all turns on willfulness. And when you look at the plethora, I mean, there must be two dozen cases in ATF's briefs that they say establish willfulness in these contexts. They're the ones that are in the chart in our opening brief. And I would submit with respect to those cases, they do establish willfulness. You have licensees who went through inspection after inspection after inspection with declining performance, increasing severity of violations. Was your client, was he an absentee owner? I mean, he never went to the store or? Oh, no, absolutely not. He was regularly at the store. In fact, did he ever go when, I forget the guy's name, the rogue employee or whatever. I mean, was he in the store at any times at all when the employee was there or? When Mr. Nelson was there, absolutely. We're not aware of him ever being there during any of the conduct at issue that Mr. Nelson. But, I mean, your client was not an absentee owner somewhere in another state. You know, he just abused it all. He at some points went into the store, dot, dot, dot. Is that right? Absolutely. I mean, Mr. Munns ran this store. In fact, he has a 20-year history of running roughly 20 other FFL businesses as well and never had that issue with ATF. And so that's the significance. You can't establish willfulness in a vacuum. You have to look at the prior compliance history. The prior compliance history is good. The immediate preceding inspection was perfect. It seems like there's at least another argument that if you've got a hands-on owner who's in there all the time, yada, yada, yada, it's a little bit different than somebody sitting up in Canada and they just look at the computer screen in the face of all that. But, anyway, that's not a question. You've got a red light. Yes, sir. So we've got your initial argument, and you have reserved time for rebuttal. So let's hear from Mr. Cowan, and then you'll have a chance to come back up. May it please the Court opposing counsel, my name is Chad Cowan, and I represent Tenora James. Ms. James is actually with us here today in the first row. Your Honors, at the administrative hearing, although Mr. Brom has just told the Court that they didn't get to see the reports, the criminal investigation and the transcripts and the recordings, nevertheless, the appellant never disputed those violations at the hearing, never objected to any of the exhibits. And I would also like to point out that although the appellant didn't get to see those reports, the sales documents that were involved in those illegal sales were exhibits. So while the reports were not exhibits, the ATF forms, for example, 4473s, were exhibits. This is a curiosity point, not that it turns on it, but, I mean, is there, I mean, in a criminal prosecution, I mean, you know, give them the whole file, you know. I mean, you may not be obligated to them, but you give them the file, and you just take away an issue later that somebody claims they didn't see something that they should have seen and all that. I mean, you know, the prosecutor's got all aces, you know. You give them the file, you're done with it, and you at least take that. So is it a regulatory? I mean, this is not a heavy issue. I'm just sort of curious if you've got a witness who's going to be testifying. You know, it's like a case agent. It's like the FBI agent testifying from the 302s, but, you know,  So is there a policy reason why in an ATF case that doesn't occur? Your Honor, I'm not aware of a specific policy, but my understanding, Your Honor, is that it's just protecting the ability to conduct these undercover. And I'm not saying that that's a good answer for the court. Like I said, it was just a curiosity. It doesn't, you know, it's not, from my standpoint, something for voting. I just wondered if it was because of ATF or some other sort of regulation, but if you're in this hearing and the person's getting a cross-examined, but somehow the documents are not in the room, maybe I could understand how you don't give them up, but if they're available for the person to cross-examine, but that's, okay, move on. But I guess your point is that there was no objection or dispute of those facts, right? Yes, Your Honor, and our position is Well, cut to the chase. You know, his whole argument is based on, you know, there's no willfulness, yada, yada. You know, it's not willfulness to hold the evidence, et cetera, et cetera. So what was the position below? Was that similar to the argument made here? Yes, I had an employee. He's a rogue employee. He did it. I didn't know anything about it. Was that the way this was presented below? Yes, Your Honor, that was the way. Well, let me word that carefully. If you read the record, there was no evidence that, for example, Mr. Mons knew what the employee was doing ahead of time. There was no evidence of that in the record. So to answer your question, Your Honor, yes. However, we believe the law is clear, though. And, you know, we heard about this 1983 case, Your Honor, that you were asking questions about, and we think that doesn't apply to this situation. There are cases. And, for example, there's this Bankston v. Thin case, which is an ATF case. I believe the only relevant distinction from that case is it involved a fine versus a revocation. But nevertheless, there was a vicarious liability issue in that case, and that court held that if it's for the benefit of the employer and within the scope of employment, that the employer or the pawn shop could be held accountable for the actions of the employee. And, Your Honor, I think it's important in this case to note that what the store manager was doing were matters that were squarely within the regulated activities of the Gun Control Act. Because, you know, when we're talking about selling to a convicted felon, that's expressly prohibited by the Act. And, in fact, Mr. Mons trains his employees about those matters. Selling to persons that are actually purchasing the firearm is expressly prohibited by the Act. Again, part of the training. But even more importantly, you know, we've heard comments about, well, this employee falsified the forms. This should not be foreseeable. Well, you know, actually the Gun Control Act also expressly prohibits falsifying the forms. So these are matters squarely within the regulated activities of the Gun Control Act. So we believe that makes it within the scope of employment. So did Alfonso, did he plead guilty or what? Your Honor, my understanding is he did plead guilty, Your Honor. All right. So in any of his plea-related matters, does he affir or do you rely on any statements he made indicating culpability or willfulness on the part of the owner? I didn't read any, but I'm just asking. Your Honor, I'm not, to be honest, I didn't specifically read that before coming in here today, but I'm not aware. But you're not relying on anything that Alfonso either said or inferred, saying, oh, yeah, he knew I worked for him, you know, I brought him the money at night, da-da-da-da-da. There's none of that to be found, right? Yes, Your Honor. We're just relying on what was in the administrative record. Okay. Yes, Your Honor. I have a question about the standard of review. The cases seem to me to say some conflicting things. Do you think the standard of review is true de novo, like a lawsuit that gets filed in federal court for the first time without any agency proceeding, or is the question whether ATF could have found willfulness on these facts? Do you understand the difference between those? I mean, is the court in the first instance deciding is this willful, or is it deciding could ATF have found it willful? Yes, Your Honor. And I believe this court, although an unpublished decision in Weaver v. Harris alluded to that, that in a de novo review in this context, we're looking at whether the ATS revocation decision was authorized by law. So I believe that's the latter. But if it's the latter, if it's was there evidence from which the ATF could have found willful violations, and I agree with you, that seems to me to be what most of these cases are doing, although we don't have anything published on that exact issue. But isn't that just like substantial evidence review that we have in a Social Security case or these others where you just say, well, was there evidence to support what the agency did? Yes, Your Honor. In fact, the – So how's that de novo, which Congress expressly said it's de novo? Your Honor, I think that takes us back to the Steins case because, as I recall, the Steins case, that court was looking at the legislative history and noted that, I believe they used the word scant, but something along those lines. And then they started talking about how judicial economy can play in this, especially when we're talking about a motion for summary judgment. And that's where we started getting the terms like substantial. But Stein was – that was at a time there was a split. Some circuits said substantial evidence here. Some said de novo. The statute didn't say. And then in the late 80s, Congress actually put the words de novo in the statute. So it just seems – it seems to me that courts might not be following what Congress said. De novo review is not saying – is not saying, well, we'll defer to the agency as long as there was evidence to support what they did. I mean, that's just not de novo, is it? Not in its basic form that we understand it, Your Honor. I agree with that. But it has sort of morphed over the years into what we see today. And we have seen cases to where courts have granted summary judgments in these ATF cases based on the administrative record. And we've seen cases – and, again, I'll go back to Weaver, Weaver v. Harris, similar discovery arguments and due process arguments that are at issue in this case were raised and rejected by this court in that case as well. If it was true de novo review without any deference to what happened in the ATF proceeding, would the government be entitled to summary judgment on these facts? Could you say that again, Your Honor? If it were true de novo – I think we agree. If there's this difference between true de novo review and saying, well, we're just going to look at whether there was evidence to support what the ATF did. Let's pretend it came straight to court. The ATF did nothing. Under a de novo review, would the government be entitled to summary judgment that these are willful violations as a matter of law? Yes, Your Honor, I believe so. And, again, looking at the administrative record, what we're looking at is, you know, the fact that Mr. Alonzo – again, not to be repetitive, but the fact that Mr. Alonzo engaged in these actions are not in dispute. It's the question of law, whether that rises to a willful violation. And then, you know, I would like to point out – Isn't willfulness usually, though – it's a mens rea. I mean, it's usually a fact issue. Isn't willfulness – any issues involving intent are typically fact issues, state of mind? Well, Your Honor, the fact that Mr. Alonzo – again, the fact that Mr. Alonzo did these things was not – Well, it's a rather strange task for us to undertake to determine of a de novo, whether it's the record of mens rea and willfulness. This case may present a – regardless of how strong the record may be, it's just that it doesn't make a lot of sense. Well, Your Honor, in the appellee's brief, we focused a lot of our comments on the criminal aspect of this case. But, you know, actually our district judge in this case also noted, you know, in February of 2013 when ATF told Mr. Mons, you know, what was going on in the store. So if you – alternatively, if you use that as a point of reference, and you alluded to this earlier, Your Honor, you know, we come back a year later and we have more violations than this. One of a de novo – I mean, it's suggested – this is a de novo review – suggests that in turn at the primary, quote, hearing, they need not have done much of anything other than to file papers and say that these are the violations that are there, et cetera, et cetera. That's a minimal due process standard. Did they have to have live witnesses at this hearing or not? No, Your Honor. And, you know, this kind of takes us back to this not being an APA hearing, so it's not a hearing on the record. What you're saying is that Congress gave to the administrative agencies the power to pull these licenses so long as there's – I presume so there's some basis for it. Correct, Your Honor. What was the – That would be a deferential inquiry, wouldn't it? Your Honor, I understand. Well, you say the Court of Appeals – that thing in the United States Court of Appeals is going to revoke these people's licenses. It's a fresh matter, and we're going to read these papers and decide that. Okay. On a different line, I'm trying to remember this. Okay, it was stated that Ms. Delonzo was a salary employee. Is that right, basically? Your Honor, I did not know that answer before. All right, well, assuming there's – you know, you're supposed to know the record better than we do, but assuming that that's the case, I'm just curious. Okay, what pecuniary benefit did Ms. Delonzo get from the illegal sales? You know, if he was salaried, you know, he made the sales. The money went to the owner of Cash Cow. Not to – so what's the – or is there some indication, in other words, of some – the pecuniary benefit to Alonzo, to wit, the pecuniary benefit with the owner, to wit, he had to know, he did know, et cetera, et cetera. I mean, is there any of that? I'm not saying it's a winning theory, but I'm just trying to probe to see what's there besides the stack of paper. Well, Your Honor, there was no evidence in the record that Mr. Alonzo solely profited from this. And then we also have, with all three of these illegal sales, these were on the appellant's place of business. They were within the business hours. These are firearms that came from the appellant's inventory. And, again, these are, you know, the documents to effectuate the sale are documents that are required, that are regulated by the ATF, that the employees of this store are trained upon. So I think all those matters are relevant. All right. A different question. Assuming arguendo, the wilfulness piece is tangential or tough to get there. After the sting, and, you know, there are these continued violations, and there are all these other violations that are there. So if there was no or insufficient support on either stand or review that the wilfulness is shown straight up, you know, because you don't have Alonzo outing the owner, no showing he got into money, none of that. No direct evidence, we'll just say. But it's got to be inferred from the circumstances, assuming a finding that doesn't get it. But you've got all these other violations post the sting, et cetera, et cetera, which argue may be stronger. Would that alone support the ATF's revocation of the license based on the record as a whole? Or would it take, or is it the combination and accumulation of this wilfulness one you've got plus this other that's the anchor for the revocation that you got below? Do you understand my question? Yes, Your Honor. Well, we do have the combination, but just to directly answer your question, Your Honor, had it just been the Alonzo, which I think is what the court's asking, would that be enough? And I think it would be. Well, I'm just, I'm answering, not trying to make it clear what I'm saying. For the moment, just for this moment, we know what you say is, you know, willfulness. And if we back off on either stand, you say, well, I don't know if that's it, willfulness or not. They don't have a smoking gun. They don't have any statement. They don't have any showing, you know, of any money given from Alonzo to him. He didn't fold on them. They got no statements. They got none of that. You know, is that enough? Albeit our instincts may tell us he probably knew, but they had the burden. They didn't put the proof on. And so we back off of the misconduct piece. I'm just asking, clearly this thing occurred. Clearly this activity occurs thereafter. There are all this whole string of other violations of Judge Higginbotham. I'm just asking, are those alone enough to support the revocation of the gun sales, you know, on this record alone? Or would it be a matter if we weren't persuaded by the misconduct, this whole thing has to go back for something else? I mean, that's my question, if you understand. Yes, Your Honor. Well, with these illegal sales, again, these were at the store. And I think, Your Honor, when a district judge is looking at this, they're allowed to make reasonable inferences based upon the evidence, and the evidence is. I'm not asking you to abandon your argument that you got enough. I'm just asking a thought question, that if for some reason teasing through this, as I said, I don't know, I'm just asking, could you win solely based on the posting violations as a showing of willfulness to support revocation of the license, pre-admitting for the moment your primary argument? I'm not asking you to abandon or concede your initial. I'm just asking because I don't know. Based solely on the posting operations? Yes, Your Honor. I mean, there are numerous and so on and so on. I'm just saying, is that enough to show willfulness and say, well, you might not have known before, but you know it's a sting, here's all these, you don't dispute them, they're undeniable, they clearly can't be accidental. I'm just asking, is that enough to support? I say it because in general at our court, you know, we can sustain something for any basis that the record supports. And that's not always the case, particularly when we get off in administrative. I'm just kind of asking more as a curiosity, not having said that the first argument, but I don't know. And we're asking, like, what cases? You know, we got the argument, but which cases best support the position taken? And I may have missed it. I know the case that you cited, Stein, in terms of saying, you know, that that best supports it. Well, Your Honor, so the post-sting violations, we have numerous cases cited to where, I mean, it was a prior inspection, it's a sting operation, but the same concept applies to where you have a store owner on notice that these things are wrong. So all these prior repeat violation cases, I believe, would be relevant to answer your question. From this circuit, we have Weaver and the Athens Pawn Shop cases. Those were, as I recall, violations relating to the acquisition and disposition record. To where? Weaver v. Harris, the appeal from a grant of summary judgment, and we said in affirming the summary judgment that was granted in supporting the revocation of the license, that there was sufficient evidence, in essence, before the matter, I don't know exactly how to phrase, but because the repeated violation is sufficient to establish willfulness, we conclude the district court properly granted summary judgment in favor of the defendant. And that's what we did, is we gave some measure of deference to it. But it's not clear to me that you could not, on a single violation by an employee, pull the license and have the authority to do that. And that doesn't mean that rather what's going on is the administrative agency does not elect to do that, prosecutorial discretion, absent a pattern or practice or whatever. Yes, sir. Those ought to be relevant to whether there is a willfulness violation. But if an employee directly makes a stock purchase, a sale, and it's undisputed, really, that he knew, he had to know, he set it up, that under the law would authorize the pull of the license. Is that so? Yes, Your Honor, I agree. In other words, that single violation, they could do it. Now, what we're dealing with is a decision by the agency that they're going to look. There could be mistakes made out there, and they tolerate a certain amount of mistakes. But then they move on it. But that still leaves the law being that all it takes is a single violation where it is willful. And willful means you sold the thing. And it's difficult to understand somebody that works there every day in this highly regulated environment of gun control that doesn't know that. And with a shopper, and he sets up the shopper, and I've got to go get this friend to do this. And he sits there and goes through the transaction. That's willful. And it goes back to my colleague's questions about attribution and criminal liability. And I have the same kind of concerns about that, which says this is really an overall proceeding we're hearing before. They could have jerked your license for the single violation. Help me with that. That's my impression from reading the brief and listening to the argument. Well, Your Honor, after the sting operations, I believe ATF did have the discretion to pull the license had they chosen to do so at that point because a single willful emphasis on willful violation can suffice under the law as we understand it. The ATF didn't. But, Your Honor, I would note that a lot of times in these cases we see this going out for a period of time before the notice of revocation is served. And the Alonzo investigation was ongoing until around November of 2014 when he was indicted, and I believe that's around the same time that the revocation letter was served in this case. But absolutely ATF. My response to the salesperson that was doing these things was not that he did not knowingly act unlawfully. It was he was a rogue employee and that he was their authorized agent. So if there's attribution and liability, it's no answer. Well, Your Honor, under the principles of vicarious liability, and we had some discussion about the corporate defendant cases earlier, so there is mechanisms in the law that allows for this, again, benefit to the employer and within the scope of the case. What is that mechanism? Excuse me, Your Honor? What is that mechanism here to protect? This man has, what, 11 pawn shop gun dealing operations, and so he's got an employee that takes the money on the table to make small purchases. That's a single act of an employee. It's willful, but he's violating his own employer's directions and standards, and is that liability attributed to him? Is that a basis for pulling the license? Yes, Your Honor, absolutely, because, I mean, let's broaden it out even more when we're talking about the recordkeeping violations. Better hire honest employees, I guess. Well, Your Honor, you know, in non-ATF cases, we see it, you know, where it's foreseeable, it's scope of employment, but in the context of an ATF case, you know, foreseeability we're talking about within the regulated activities. So even though the training was contrary to what happened, these are matters that are specifically prohibited and regulated by the ATF under the Gun Control Act, and we believe the law allows for it. All right. Any other questions? Okay. All right. Thank you, Mr. Allen. All right. Back to you, Mr. Brown. Yes, sir. There's three points that I'd like to touch on very briefly in rebuttal. The first is the standard of review. Your Honors touched on it. De novo means de novo. In a non-APA case where my client never has those protections to defend themselves, the government is unable to revoke this license. That is why that de novo review at the district court level is so critical, because it was a non-APA proceeding below with no ALJ and none of those protections. And, in fact, the district court specifically erred in that regard on page 8 of its opinion when it stated, however, the standard of review here is limited. Is what? Is limited. Because the district court took that view that, no, I just have to look at it, and if there's something there, I guess it's okay. And de novo means de novo. It is all the more critical in a non-APA proceeding. Because at some point, again, it goes back to what I said before, when does my client get their day in court? It has to be somewhere sometime. So what is it you want? Okay, it's part of your objection. Well, I know what it is. You're appealing that, you know, the grant of the summary judgment was, you know, improper. Ordinarily, we get that argument, A, the party's saying, you know, tribunal below didn't construe the facts and the like most favorable to me as a non-movement. Ergo, there are disputed facts, et cetera, et cetera. It's not occurring to me that there are disputed facts. It doesn't look like it. Although I heard what you said about not getting a record, but I'm not sure what's disputed in terms of that. Are you arguing that the summary judgment was error as a matter of law because of the willfulness? Is that your principal law argument on the summary judgment entry? Absolutely. It's not a fact. You're not making a fact argument on propriety or not of summary judgment. You're making a legal argument saying that willfulness is not there. Is that what you're saying? Absolutely, Your Honor. There's nothing in this record that submits the conclusion of willfulness. Second point I'd like to address very briefly. On the standard of review, before you move on, courts that have said, well, even though it says de novo, there is some deference, focus on the statute. While it says de novo, they say it limits this review to the question whether the denial or revocation of a permit was authorized by ATF, whether ATF was authorized to do this. So why doesn't that just make our focus whether there was evidence to allow ATF to do it, even if we on our own wouldn't have done it? Absolutely, Your Honor. And the thing is that those are really one and the same because the statute is what allows ATF to act. But for the statute, ATF can't do anything. The statute says, ATF, you can revoke a license if two things are present, a violation and willfulness. So but for willfulness, they're not authorized to act. And so that really is all one and the same issue because there is no authority to do anything but for establishing willfulness, and you need that de novo review in order to answer that question. So the second question, Your Honor, as to whether or not the paper… How do you review whether the decision was authorized? I'm sorry, Judge? How do you review a court? How do you get judicial review of whether the acts by the ATF were authorized? You look at two factors, the violations and willfulness. And so here, you know, there wasn't an issue with the violations. But with respect to the willfulness factor, again, it's a totality of the circumstances test. By definition, it has to be. Well, that sounds like you challenged that in the United States District Court that the United States District Court to determine authority was determined whether or not this was willful. Well, you have to answer the willfulness question to know whether or not there is authority. Well, yes, so the district court's done that. And I would submit that the district court failed to meet its obligation to give Cashcow that de novo review to make a true determination. In what way? Well, again, the court in its opinion specifically stated that its review was, in fact, limited, and so it looked to see whether or not there was something there that ATF could have thought what they thought and did what they did, and that's not what the law requires. Before we started, what relief do you want from us? Well, certainly the summary judgment should be reversed. And send it back to the district court. And send it back to the district court. And the district court's going to do what? The district court needs to fulfill its obligations. I don't want to give me the conclusion. What is he going to do? Well, he's going to. Is he going to have a trial? Are you going to have witnesses? Yes, absolutely. You're making the question of fulfill his obligation. What does the district court do? This case should be tried to a fact finder, which would be the district court in this instance, with all of the protections that come along with that. Okay. That presupposes there are facts that are disputed. And you said that none of these facts are disputed. As to the violations themselves. Why can't we look at it and say that beyond question this is willful? You've had due process hearing. Because, Your Honor, the answer to that is pretty straightforward. The willfulness determination must be made not in a vacuum. And so when you look at it. It's not in a vacuum. It's against these enumerated violations, none of which are disputed. It's factually occurring. Correct. But you have to balance that against a 20-year clean track record of operating an NFFL. That's an administrative judgment of whether or not to proceed, not whether it's authorized. It's all one and the same with all due respect, Judge, because you can't. You're not authorized without willfulness to answer willfulness. You have to look at. The trial court is supposed to decide. There's nothing to decide in this case then. There are no facts to decide. But you want the district court to, none of this, do something. Tell me exactly what he's going to do. Is he going to say, well, this was authorized or not authorized? Or is he going to say, I would revoke or not revoke? Because that's the only thing remaining. It's open. And those are the same question because you can't revoke without being authorized. And to answer authorization, you have to look at all the proactive conduct that CASHCOW took, all the employee training, the clean compliance history, the prior inspection that was closed with no violations whatsoever. Because while one violation could be enough when there's a. . . That goes to the appropriateness of whether to revoke. It doesn't go to the question of authority to revoke. And with all due respect, Your Honor, it does because without willfulness, and on this record they don't have it, there is no authority. So it is circular. I recognize that. Look, I'll put it to you. There is beyond question willfulness here. It cannot be any other way unless you take the legal position that the. . . which Counsel Lobson has quarreled with, that an individual who deliberately sells contravening the law, and it's undisputed that he did that. That's what a stock purchase was. The guy knew what was being set up. You're violating the law, and that's a single violation. Now, what you're saying is, no, well, they did all that, but he's a good guy. He's been in business a long time, and he ought not do that. Absolutely not, Your Honor. Well, then what else are you going to argue to the court? The licensee is Fairmont Cash Management, Inc. It is not Nelson Alonzo. Mr. Alonzo's intention. . . He was an employee. He was, but the license. . . You put him there. The license can't be revoked absent reckless or plainly indifferent conduct by the licensee itself, who is the corporation, not the employee, which is why. . . Well, after a sting operation, you put him right back in place, and he kept doing it. Absolutely not, Your Honor. After the sting operation, he was terminated. He was, but the violations continued, so it wasn't just Alonzo. The paperwork violations. . . Oh, paperwork violations. . . . were of a different nature. So the paperwork violation happened to be the registration of these cells of these firearms so they go in the National Firearm Registry so that we don't have convicted felons and thugs running around getting other sorts of weaponry. And that's just a paper violation. And, Your Honor, I'm not minimizing anything, but when you look at the cases cited by ATF, every single one of them that we discuss in our brief, every single one without exception, is based on an atrocious track record of multiple inspections, repeat violations, and increasing numbers. And that is what courts base willfulness on. When you've been warned by ATF, you've gotten letters, you've been to multiple warning conferences, they've told you if you do this again, even one time, we're going to revoke you. And on the record we have here, there is simply none of that. In fact, we have the exact opposite where the record is actually quite good of past compliance. And in the cases that they rely upon . . . This record is a pretty good record. We're in a sad shape. Well, Your Honor, again, with all due respect, with respect to . . . With all due respect, you're not dealing with the facts here. You . . . I just read only a part of it. There's two, three pages of these enumerations, and each of these enumerations deal with four different occasions, 16 different occasions, 10 different occasions, 14 different occasions, three different occasions, three different occasions, et cetera, et cetera, et cetera. And I'm just trying to understand what you really want the courts to do before the district court. And I think you've answered me, but I don't understand what it is. I believe that the court . . . And what did you say to the district court that he should do? The district court should try this case with a full record after discovery, just like any other civil case before it. Okay. Thank you. Thank you. All right. Counsel, both sides.